**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**

LANDA WHITE,

      Plaintiff,

v.                                        CASE NO. 1:12-cv-00206-MP-GRJ

ALLERGAN, INC.,
TIMOTHY AARON HIPP, M.D.,
et al.,

      Defendants.

_____/

## O R D E R

Previously, this Court entered an order at Doc. 12, directing the Clerk to accept defendant Allergan's Amended Notice of Removal in order for the removal to correspond to the Amended Complaint filed in the Eighth Judicial Circuit Court of Florida, in and for Alachua County, on September 4, 2012.[1]  The Court also directed the plaintiff to file a response by November 16, 2012.  The Court stayed all deadlines "pending the resolution of the removal jurisdiction issue." (Doc. 12, p. 3).  The plaintiff failed to file a motion to remand or other response germane to this Court's diversity jurisdiction on removal.  Instead, the plaintiff sent Allergan's counsel a Consent to Voluntary Dismissal and asked him to file it with the Court.  Allergan's counsel did so at Doc. 14, and attached the Consent at attach. 1 to Doc. 14.  The consent is captioned for this Court rather than the state court, attempts to dismiss Allergan, but does not mention whether the medical defendants are affected by the dismissal.

---

[1]The Amended Notice of Removal was filed as Doc. 13, and the Amended Complaint was attached as attach. 1 to Doc. 13.

Because such a dismissal would remove the only diverse defendant from the case, the Court continued to be concerned about the issue of its jurisdiction and issued the order at Doc. 15. That order directed the plaintiff to file a status report concerning this settlement, whether the Florida medical defendants remain in the case, and how that affects diversity jurisdiction. The plaintiff failed to respond and failed to attend the status conference conducted on January 10, 2013.[2] Allergan's counsel attended, but the Florida medical defendants did not make an appearance, having not yet been served with the Amended Complaint.

Upon consideration, the Court concludes that it lacks diversity jurisdiction over this matter, and thus it is without jurisdiction to approve the dismissal of any party and must remand the case to the state court. The Amended Complaint alleges ten counts. The first three allege medical malpractice, lack of informed consent, and negligent hiring, supervision and retention, against the medical defendants, all of whom are citizens of Florida for diversity purposes. The remaining seven allege a variety of non-Federal-law-based claims against Allergan, which is a Delaware and California citizen for diversity purposes. (Doc. 13, ¶ 12). All of the claims relate to the marketing, distribution, surgical implantation, adjustment and performance of a LAP-BAND Adjustable Gastric Banding System ("Lap-Band") manufactured and distributed by Allergan and implanted and adjusted by the medical defendants or their employees.

In the Amended Notice of Removal, Allergan notes the presence of the nondiverse Florida medical defendants, but argues that they should be disregarded for diversity purposes because they were fraudulently joined. "Fraudulent joinder" is a judicially created doctrine that

---

[2]The plaintiff's counsel, Sybil Shainwald, who is apparently not admitted to practice in Florida or the Northern District of Florida, contacted the Court at the eleventh hour, seeking permission to appear by telephone. The request was denied as untimely.

provides an exception to the requirement of complete diversity in three instances: (1) where there is no possibility that the plaintiff can prove a cause of action against the resident (non diverse) defendant; (2) where there is outright fraud in the plaintiff's pleading of jurisdictional facts; and (3) where a diverse defendant is joined with a non-diverse defendant as to whom there is no joint, several, or alternative liability and the claim against the diverse defendant has no real connection to the claim against the non-diverse defendant. Tapscott v. MS Dealer Service Corp., 77 F.3d 1353, 1360 (11th Cir.1996), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir.2000). Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir.1998).

Relying upon the third scenario set out above, Allergan argues as follows:

> [M]edical malpractice claims are not properly joined with product liability claims where, as here, the alleged product defect is a separate alleged cause of injury from any subsequent alleged malpractice of the healthcare providers . . . . Plaintiff's medical negligence claims do not arise out of the same transaction or occurrence, or series of transactions or occurrences, as her product liability claims against Allergan. Rather, each of the claims involves unique factual and legal issues. In fact, the medical affidavit attached to Plaintiff's Amended Complaint alleges that the purported medical malpractice occurred more than two years after the Lap-Band® was implanted.

(Doc. 13, ¶¶ 24-25; emphasis and internal citations removed).

The Court disagrees with Allergan's conclusion. As noted in the cases cited by Allergan, joinder is not fraudulent in cases of "joint, several, or alternative liability" between diverse and non-diverse defendants. See, e.g., Stone v. Zimmer, Inc., Not Reported in F.Supp.2d, 2009 WL 1809990, *2 (S.D.Fla., 2009)(emphasis added by undersigned). Here, the central issue is why the Lap-Band malfunctioned, unbuckled or broke while in use and inserted in plaintiff's body. For example, in ¶ 53 of the Amended Complaint, which is part of Count I against the medical defendants, plaintiff alleges that the medical defendants

were negligent in failing to conduct adequate radiological testing post-surgery to insure proper placement of the LAP-BAND and in overfilling and hyperinflating the patient's LAP-BAND, contributing to the band's unbuckling and causing the patient to require revision surgery and suffer bodily injury and resulting pain and suffering.

Doc. 13, attach. 1, p. 10. On the other hand, in Count IV, ¶ 78, of the Amended Complaint, plaintiff alleges that she "reasonably expected that the Lap-Band would not malfunction, unbuckle and/or break while in use and inserted in her body." Plaintiff also alleged that "[t]he LAP-BAND was used by plaintiffs physician in a manner foreseeable to Defendant and in fact was used in a manner that Defendant instructed physicians and their patients to use the product." Doc. 13, attach. 1, ¶ 89. These allegations conflict with the allegations of ¶ 53 which contend that the medical defendants were negligent in the manner they used the Lap-Band, revealing that the plaintiff is alleging alternative theories of liability - either the medical defendants are liable for the unbuckling and breaking, or the manufacturer's defect was. Paragraphs 101 (in the negligence count against Allergan), 131 (in the negligent misrepresentation count against Allergan), 155 (in the fraud by nondisclosure count against Allergan), 164(d) (in the express warranty count against Allergan), 181 (in the implied warranty count against Allergan) and 190 (in the Florida consumer protection laws count against Allergan) all rely upon the theory that it was a defect in Allergan's product rather than a doctor's malpractice that caused the unbuckling or breaking and subsequent need for removal in the plaintiff. In short, plaintiff is clearly asserting alternative theories of liability in this case, and thus joining the medical defendants with the manufacturer in one suit is not only not fraudulent, it is probably required.

The United States Supreme Court has repeatedly made clear that "[t]he federal courts are under an independent obligation to examine their own jurisdiction." United States v. Hays, 515 U.S. 737, 742, 115 S.Ct. 2431, 2435, 132 L.Ed.2d 635, 642 (1995); Wilson v. Minor, 220 F.3d

1297, 1303 n. 11 (11th Cir.2000) ("Of course, a federal court has an independent obligation to ensure that it has jurisdiction over any claim brought before it even if jurisdictional questions are not raised by either party.") (citing <u>Hays</u> ); <u>University of South Alabama v. American Tobacco Co.</u>, 168 F.3d 405, 410 (11th Cir.1999) ("[A] court should inquire into whether it has subject matter jurisdiction at the earliest possible stage in the proceedings. Indeed, it is well settled that a federal court is obligated to inquire into subject matter jurisdiction sua sponte whenever it may be lacking.") (citations omitted); <u>Fitzgerald v. Seaboard System R.R., Inc.</u>, 760 F.2d 1249, 1251 (11th Cir.1985) ("A federal court not only has the power but also the obligation at any time to inquire into jurisdiction whenever the possibility that jurisdiction does not exist arises.").

Moreover, this Court's "removal jurisdiction is no exception to a federal court's obligation to inquire into its own jurisdiction.... Therefore, when an action is removed from state court, the district court first must determine whether it has original jurisdiction over the plaintiff's claims." <u>American Tobacco</u>, 168 F.3d at 410 (citation omitted).  Here, for the reasons given above, complete diversity of the parties is lacking and no federal questions are presented.  Therefore, the Court lacks subject matter jurisdiction and cannot accept the voluntary dismissal of any party.  Instead, it is hereby

**ORDERED AND ADJUDGED**:

This case is remanded to the Eighth Judicial Circuit Court of Florida, in and for Alachua County, and the Clerk is directed to close the file.

**DONE AND ORDERED** this *15th* day of January, 2013

*s/Maurice M. Paul*

Maurice M. Paul, Senior District Judge